UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN F. HORN,<br><br>Plaintiff,<br><br>Vs.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Civ. #  18-4062<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

COMES NOW Plaintiff Kathleen F. Horn and for her Complaint against the Defendant states and alleges as follows:

## **JURISDICTION**

1. This is an action for reverse race discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, codified at 42 U.S.C.A. § 1981a.

2. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 42 U.S.C. § 2000e-16(a) and 28 U.S.C. § 2000-5(f)(3).

3. Venue is proper in accordance with 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000-5(f)(3).

4. Plaintiff Kathleen Horn ("Horn") is an adult resident of Tabor, South Dakota.

5. In 2015, Horn was employed as a registered nurse at the United States Department of Health's Wagner Service Unit of the Indian Health Service Facility ("the Agency").

6. The Wagner Service Unit, located in Wagner, South Dakota, is a part of the Agency's Aberdeen Area health care network.

7. On May 7, 2015, Horn filed a formal Charge of Discrimination alleging hostile work environment and disparate treatment because of reverse race discrimination at the Agency's Wagner IHS facility.

8. On July 2, 2015, Horn was constructively discharged from employment at the Wagner IHS facility and alleges that her termination is related to her protected activity.

9. On May 3, 2018 the U.S. Department of Health and Human Services issued its Final Agency Decision on Horn's charge of discrimination.

## GENERAL ALLEGATIONS

10. Horn is an adult Caucasian and is also a qualified registered nurse.

11. The Wagner IHS facility primarily serves members of the Yankton Sioux Tribe as well as other Native American tribal members. The Agency recruits and hires from a wide pool of applicants and has a diverse staff pool that includes both members of protected classes and members who are not in protected classes. As a result, race and color in terms of tribal affiliation are routine topics of discussion among staff and supervisors in the Wagner IHS facility.

12. Horn was hired from a wide pool of qualified applicants and consistently performed her duties in a manner that met her employer's standards.

13. The Agency's Wagner IHS administration has a history of being reluctant to take disciplinary action against its minority employees, which creates two different performance standards for employees at its facilities depending upon race or color.

14. The Agency's Wagner IHS administration does not narrowly tailor its diversity efforts to prevent reverse discrimination against non-minority employees.

15. Between 2014 and her termination in July 2015, Horn was supervised by an Agency employee who harassed Horn because of her race and treated Horn differently in terms of leave

benefits, attendance benefits, disciplinary standards and outside employment opportunity policies because Horn is not a tribal member.

16. Between 2014 and her termination in July 2015, Horn made repeatedly reports to her chain of command supervisors that she was being subjected to a hostile work environment due to the harassment and racial bias expressed by her supervisor because Horn is not a tribal member.

17. The Agency was aware that other members of the Wagner IHS facility were also experiencing and witnessing harassment, disparate treatment because of tribal membership, and hostile work environments because of a supervisor at the Wagner IHS facility.

18. Between 2014 and her termination in July 2015, Horn made repeatedly reports to her chain of command supervisors that she was being subjected to disparate treatment in terms of leave, attendance, disciplinary standards and outside employment opportunities that her supervisor was applying to Horn because Horn is not a tribal member.

19. On January 29, 2015, Horn filed an informal complaint against the Agency alleging that she had been subjected to a hostile work environment and was subjected to arbitrary leave, attendance and outside employment opportunity policies by her supervisor because Horn is not a tribal member.

20. The Agency's response to Horn's complaints about reverse race discrimination in its Wagner IHS facility were limited to the suggestion that everyone at the Wagner IHS facility should "just get along."

21. Accordingly, on May 7, 2015, Horn filed a formal charge of discrimination against the Agency.

22. The Agency's EEO Counselor did not properly administer Horn's EEO complaint. As an example, the Agency's EEO Counselor opted to misidentified Horn's complaint as a class

3

action and arbitrarily appointed Horn to be a Class representative. Horn was required to proceed as a class representative even while she maintained that she only wanted to have her individual complaint investigated and addressed.

23. On July 2, 2015, Horn was constructively discharged from employment because of the Agency's failure to address her hostile work environment and its failure to properly administer her EEO complaint.

## COUNT ONE:

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND THE CIVIL RIGHTS ACT OF 1991
*(Disparate Treatment)*

24. Horn is a Caucasian adult.

25. Horn was qualified for and able to perform the duties of her position at Wagner IHS.

26. Horn was subjected to adverse and unequal treatment with respect to the terms and conditions of her employment by a supervisor because of Horn's race.

27. Horn was treated differently and worse than other similar situated employees in terms of leave, attendance, disciplinary standards and outside employment opportunities because of Horn's race.

28. The different treatment Horn received because of her race adversely impacted her employment opportunities and her employment income.

29. The Agency has not proffered a legitimate reason for Horn's hostile or different treatment.

30. The Agency's failure to properly administer and investigate Horn's EEO complaints were done to delay investigation and action on Horn's complaints and to make Horn's work environment even more hostile and intolerable.

31. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees, Horn was constructively discharged from employment.

32. Horn asserts that at least some of her job duties were filled by a member of the supervisor's preferred protected class.

33. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees, Horn has suffered embarrassment, humiliation and mental anguish.

34. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees, Horn was constructively discharged from employment.

35. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees sustained lost income, lost employment-related benefits, and a diminishment in future earning capacity, as well as incurred costs and expenses.

36. The unlawful practices complained of in Count Two were recklessly indifferent to Horn's federally protected rights as an employee.

## COUNT TWO:

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND THE CIVIL RIGHTS ACT OF 1991
*(Hostile Work Environment)*

37. Horn is a Caucasian adult.

38. Horn's supervisor subjected Horn to repeated harassing comments and racially biased remarks related to Horn's race.

39. Horn's workplace was permeated by discriminatory intimidation and insult.

40. The Agency is aware of the extent of the hostile work environment because several other employees supervised by Horn's supervisor also informally and formally complained of harassment based on race and hostile work environments.

41. Horn's supervisor's comments to Horn were demeaning, repeated and interfered with Horn's work performance.

42. Horn had physical and emotional symptoms and required medical care and counseling because of the hostile work environment.

43. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees, Horn was constructively discharged from employment.

44. As a direct and proximate cause of the Agency's hostile work environment, Horn has suffered embarrassment, humiliation and mental anguish.

45. As a direct and proximate cause of the Agency's discriminatory treatment through its supervisory employees sustained lost income, lost employment-related benefits, and a diminishment in future earning capacity, as well as incurred costs and expenses.

46. The unlawful practices complained of in Count Two were recklessly indifferent to Horn's federally protected rights as an employee.

## COUNT THREE:

### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE CIVIL RIGHTS ACT OF 1991
*(Retaliation)*

47. Horn has engaged in protected activity by reporting discrimination and related hostile environment claims to its EEO office since at least January 29, 2015.

48. Since at least January 29, 2015, the Agency has been aware of Horn's protected activities.

49. The Agency was aware that Horn had begun to experience physical and emotional health issues because of her hostile work environment.

50. The Agency's EEO office intentionally misidentified Horn's EEO complaint as a class action complaint in order to delay its obligation to investigate and address it.

51. The Agency tacitly approved of and enabled Horn's supervisor to continue to subject her to disparate treatment.

52. The Agency tacitly approved of and enabled Horn's supervisor to continue to subject her to a hostile work environment.

53. As a direct and proximate cause of the Agency's retaliatory treatment, Horn was required to request leave from work and to seek medical care and counseling.

54. As a direct and proximate cause of the Agency's retaliatory treatment, Horn was constructively discharged from employment.

55. As a direct and proximate cause of the Agency's retaliatory treatment through its supervisory employees, Horn has suffered embarrassment, humiliation and mental anguish.

56. As a direct and proximate cause of the Agency's retaliatory treatment, Horn has sustained lost income, lost employment-related benefits, and a diminishment in future earning capacity, as well as incurred costs and expenses.

57. The unlawful practices complained of in Count Two were recklessly indifferent to Horn's federally protected rights as an employee.

## **REQUESTS FOR RELIEF**

Plaintiff Kathleen Horn requests judgment against Defendant as follows:

1. For an award sufficient to compensate her for all special and general damages as allowed by Title VII of the Civil Rights Act and the Civil Rights Act of 1991;

2. For her reasonable attorney fees, costs and disbursements, including prejudgment interest, incurred in pursuit of this matter;

3. For a trial by jury; and

4. For such other and further relief as the Court may deem just and appropriate.

Dated this 4th day of June 2018.

                JOHNSON POCHOP & BARTLING

                _____
                Stephanie E. Pochop
                405 Main St. | PO Box 149
                Gregory, SD 57533
                (605) 835-8391
                stephanie@rosebudlaw.com
                *Attorney for Plaintiff Kathleen F. Horn*